*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1128**

State of Minnesota,
Respondent,

vs.

Romaine Anthony Reid,
Appellant.

**Filed January 26, 2026
Affirmed in part, reversed in part, and remanded
Smith, Tracy M., Judge**

Stearns County District Court
File No. 73-CR-23-1368

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Kyle R. Triggs, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Anders J. Erickson, Johnson Erickson Criminal Defense, Minneapolis, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Slieter, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**SMITH, TRACY M.**, Judge

In this appeal from the final judgment of conviction for first-degree criminal sexual assault following a stay for postconviction proceedings, appellant Romaine Anthony Reid makes two arguments. Reid argues, first, that his waiver of the right to a jury trial was

invalid because it was not knowing and intelligent and that he is therefore entitled to a new trial. Second, Reid argues, in the alternative, that the district court erred by denying him a postconviction evidentiary hearing on his ineffective-assistance-of-counsel claim because he alleged specific facts that, if taken as true, could entitle him to relief. We reject Reid's argument that the waiver of his jury-trial right was invalid, but we agree that the district court erred by denying an evidentiary hearing on his ineffective-assistance-of-counsel claim. We therefore affirm in part, reverse in part, and remand for further postconviction proceedings.

**FACTS**

In February 2023, Reid was charged by respondent State of Minnesota with one count of first-degree criminal sexual conduct against A.O. in violation of Minnesota Statutes section 609.342(d) (2022).

At his first-appearance hearing, Reid was not represented by counsel because his public defender application was denied on the ground that he was not financially eligible. During the hearing, the district court identified the charge and explained that it was a felony-level offense that carried a maximum sentence of 30 years' imprisonment and/or a $40,000 fine. Reid confirmed that he had received a copy of the state's complaint and declined the district court's offer to read the complaint aloud. Also during the hearing, the prosecutor stated that the presumptive sentence was imprisonment for 156 months or "even more if *Blakely* is found for multiple forms of penetration." On February 21, 2023, the state

filed a *Blakely* motion seeking an upward aggravated sentencing departure based on the alleged aggravating factor of multiple forms of penetration.[1]

By February 23, 2023, when Reid appeared for a domestic-violence-court-eligibility hearing, Reid had retained counsel. At that hearing, the prosecutor again noted that Reid faced a presumptive prison sentence of 156 months for criminal sexual conduct and could be facing "well and above the 156 months" based on an alleged aggravating factor. In April 2023, the state filed an amended *Blakely* motion to include the additional alleged aggravating factor that the victim was particularly vulnerable because her children were present at the residence during the offense.

On February 5, 2024, in a hearing the day before the scheduled trial in the matter (the waiver hearing), Reid orally waived his right to a jury trial and the district court accepted his waiver. An excerpt of the waiver colloquy appears in Section I below. The matter proceeded to a bench trial, and the district court found Reid guilty of first-degree criminal sexual conduct. The district court imposed a prison sentence of 240 months—an upward durational departure from the presumptive guidelines sentence of 144 months. The district court relied on its findings of two aggravating factors: multiple forms of penetration, and A.O. was particularly vulnerable at the time of the incident because her children were in the home.

---

[1] Under *Blakely v. Washington*, a criminal defendant has the right to a jury trial on aggravating facts asserted to support an upward sentencing departure. 542 U.S. 296, 303 (2004); *see also State v. Shattuck*, 689 N.W.2d 785, 786 (Minn. 2004) (applying *Blakely* in Minnesota).

Reid appealed, and we granted his motion to stay the appeal while he filed a petition for postconviction relief in the district court alleging ineffective assistance of counsel. In his petition, Reid claimed that he provided his trial counsel with audio recordings establishing that A.O. admitted that the sex was consensual, that A.O. told the police that the sex was nonconsensual only because that was the story the police wanted, and that A.O. did not want to pursue charges against Reid. Reid alleged that his trial counsel did not review, investigate, or introduce this evidence at trial, constituting ineffective assistance of counsel. The postconviction court denied Reid's request for an evidentiary hearing. We then reinstated this appeal.

## DECISION

**I.     The district court did not err by accepting Reid's jury-trial waiver as valid.**

Reid argues that the district court erred by not obtaining a valid jury-trial waiver before proceeding to a court trial. He contends that the district court failed to ensure that Reid's waiver was knowing and intelligent—specifically, that Reid understood both the charge and the potential punishment that he faced. The argument is unconvincing.

A district court's decision to accept a jury-trial waiver is reviewed de novo. *State v. Kuhlmann*, 806 N.W.2d 844, 848-49 (Minn. 2011). The United States and Minnesota Constitutions guarantee a criminal defendant the right to a jury trial. U.S. Const. art. III, § 2, cl. 3, amend. VI; Minn. Const. art. 1, § 6. For a jury-trial waiver to be constitutionally valid, it must be knowing, intelligent, and voluntary. *State v. Ross*, 472 N.W.2d 651, 653 (Minn. 1991).

4

Pursuant to the Minnesota Rules of Criminal Procedure,

> [A] defendant, with the approval of the court, may waive a jury trial on the issue of guilt provided that the defendant does so personally, in writing or on the record in open court, after being advised by the court of the right to trial by jury, and after having had an opportunity to consult with counsel.

Minn. R. Crim. P. 26.01, subd. 1(2)(a). When a defendant looks to waive their right to a jury trial on the record in court, the district court must accompany its advisory with searching questions to ensure the waiver is knowing, intelligent, and voluntary. *State v. Osborne*, 715 N.W.2d 436, 442 (Minn. 2006). The defendant does not need to have exhaustive knowledge of the strategic benefits and disadvantages of a jury trial compared to a bench trial. *Ross*, 472 N.W.2d at 654. In determining whether a jury-trial waiver is valid, the focus is on whether a defendant understands the basic elements of a jury trial. *Id.*

During the waiver hearing, both parties' counsel asked questions regarding Reid's understanding of the right to a jury trial and the waiver as follows:

> [REID'S COUNSEL]: Mr. Reid, have you had enough time to speak with me about your case?
> THE DEFENDANT: Yes, sir.
>
> [REID'S COUNSEL]: Do you believe that I've represented your interests and fully advised you?
> THE DEFENDANT: Yes, sir.
>
> [REID'S COUNSEL]: Do you understand that you have an absolute right to a trial before a jury of 12 people and if you were to choose the jury trial all 12 jurors would have to agree that you were guilty in order for you to be convicted, correct?
> THE DEFENDANT: Yes, sir.
>
> [REID'S COUNSEL]: You also know that you have the option to waive this right to a jury trial and instead have your trial before a judge sitting alone?

THE DEFENDANT: Yes, sir.

[REID'S COUNSEL]: And if you were to waive jury trial then [the] judge could decide all issues of guilt or innocence, right?
THE DEFENDANT: Yes, sir.

[REID'S COUNSEL]: There was quite a few times over the last (inaudible) that you're comfortable with your decision to waive your right to a jury trial?
THE DEFENDANT: Yes, sir.

[REID'S COUNSEL]: Is that sufficient, Judge?
THE COURT: [Counsel for the state], do you have any follow-up?
[COUNSEL FOR STATE]: I do.

[COUNSEL FOR STATE]: Sir, have you talked to your attorney about the fact that there is what is filed in this case as – referred to as *Blakely*?
[REID'S COUNSEL]: And, sir, if I could remind you those are the special questions that the judge would have to answer if your sentence were to be enhanced. That's called *Blakely*. Do you remember talking about that?
THE DEFENDANT: Yes, sir.

[COUNSEL FOR STATE]: And you understand that you have the right to a jury determination not only on whether you're guilty or not guilty of the crime itself but also on whether or not those additional factors would apply. Do you understand that?
THE DEFENDANT: Yes, ma'am.

[COUNSEL FOR STATE]: And you understand that by waiving your right to a jury trial you're going to ask the Court not only to determine whether you are guilty or not guilty but in fact if the Court were to find you guilty on whether or not those questions of yes or no would apply to what I was referring to as *Blakely*. Do you understand that?
THE DEFENDANT: Yes, ma'am.

[COUNSEL FOR STATE]: Do you need any more time to talk to your attorney about the rights that you're giving up today?

6

THE DEFENDANT:  No, ma'am.

[COUNSEL FOR STATE]: And knowing that the Court would make that determination on both the factual question if you're found guilty and whether or not you're guilty or not guilty you still want to waive your right to a jury trial here today?
THE DEFENDANT:  Yes, ma'am.

Reid argues that this colloquy did not satisfy the requirements for a knowing and intelligent waiver because it did not include discussion of the charges and the possible punishment that he faced. The state counters that the colloquy was sufficient under the supreme court's decision in *Ross* and because Reid was informed of both pieces of information.

In *Ross*, the supreme court concluded that the defendant had made a valid waiver of his right to a jury trial when he was advised that he had a right to a jury of 12 persons and he confirmed that he had had adequate time to discuss the matter with counsel. *Id.* The supreme court decided that Ross "was advised by the court of the essential characteristics of a jury trial," even though he was not told that the jury's decision had to be unanimous. *Id.* Here, Reid was advised of his right to a trial by jury of 12 people, that the 12 jurors would have to agree to find him guilty, and that, if he waived his right, the judge would decide all issues of guilt or innocence. Reid also acknowledged that he had had enough time to speak with his lawyer about his case. And, because the state was seeking an aggravated sentence, Reid also was asked and acknowledged that he was waiving a right to have a jury finding aggravating facts. As the state argues, this case is analogous to *Ross*.

Reid argues, though, that a valid waiver required a specific discussion of the criminal charge that he was facing and the possible sentence that he could receive if he were convicted. Reid relies on *State v. Little*, 851 N.W.2d 878 (Minn. 2014). In *Little*, the supreme court held that, when a new charge is added after a defendant waives their right to a jury trial, the district court must obtain a renewed waiver. 851 N.W.2d at 883. Reid urges us to interpret *Little* to mean that a jury-trial waiver must always include the specific charge and the punishment that the defendant faces. The argument is unpersuasive.

In *Little*, the defendant was initially charged with third- and fourth-degree criminal sexual conduct. *Id.* at 880. He waived his right to a jury trial following a colloquy that established his understanding that he was entitled to a trial by 12 jurors who had to be convinced of his guilt beyond a reasonable doubt, that he understood that his case would be heard only by the judge, and that he had consulted with his attorney about waiving his right. *Id.* at 881. Thereafter, the state amended the complaint to add a charge of first-degree criminal sexual conduct. *Id.* The matter proceeded to a bench trial, and, after his conviction, Little appealed, arguing that his right to a jury trial was violated because he had not personally waived the right to a jury trial after the new charge was added. *Id.* The supreme court agreed. It explained that "a jury-trial waiver only applies to issues formed at the time of the waiver and not to issues added after the waiver." *Id.* at 882. It reasoned that, in deciding whether to waive their jury-trial right, defendants consider the merits of their case, trial strategy, and the likely sentence and that, to do so, they have to know the charges that they face. *Id.* at 883. The supreme court concluded: "[W]hen the State amends the

complaint after a defendant's jury-trial waiver, the district court must obtain a renewed waiver of the defendant's right to a jury trial on the newly added charge." *Id.*

Here, there was no change to Reid's charge or to his potential punishment after he waived his jury-trial right. Reid's first-degree criminal sexual conduct charge was the only charge that he faced, and it remained consistent from the original complaint. So, too, did the presumptive sentence and the possibility of an enhanced sentence based on aggravating factors. There were no "issues added" after the waiver. The rule from *Little* does not apply.

Moreover, at the time of his waiver, Reid had the information he needed to consider the merits of his case, trial strategy, and a potential sentence. The record demonstrates that Reid was aware of the charge and potential punishment that he faced. At the waiver hearing, Reid acknowledged that he had had enough time to consult with counsel and that he believed his lawyer had fully advised him about his case. And a year earlier, during his first-appearance hearing, when he was not yet represented by counsel, Reid was informed of the charge he faced, was provided a copy of the complaint, and was informed that he faced a presumptive prison sentence of 156 months, which could increase based on an aggravating factor. In addition, during another hearing that was held shortly thereafter— by which time Reid was represented by counsel—the prosecutor discussed the presumptive sentence and the possibility of an enhancement based on an aggravating factor. On this record, at the time of his waiver, Reid understood the basic elements of a jury trial, including how those elements related to his charge and potential sentence. As such, the district court did not err by accepting Reid's jury-trial waiver as valid.

**II.    The district court abused its discretion by summarily denying Reid's postconviction petition.**

Reid argues that the district court abused its discretion by denying his postconviction petition without an evidentiary hearing because he alleged facts that, if true, may entitle him to postconviction relief based on ineffective assistance of counsel.

Appellate courts review the denial of a petition for postconviction relief, including the denial of relief without an evidentiary hearing, for an abuse of discretion. *Davis v. State*, 784 N.W.2d 387, 390 (Minn. 2010). A district court "abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). Appellate courts review a district court's legal conclusions de novo. *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013).

When a defendant files a petition for postconviction relief, the district court must hold an evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2018). A district court "may summarily deny a petition without holding an evidentiary hearing when the petitioner alleges facts that, if true, are legally insufficient to grant the requested relief." *Davis v. State*, 15 N.W.3d 635, 642 (Minn. 2025) (quotation omitted). In determining whether to hold an evidentiary hearing, the district court must consider "the facts alleged in the petition as true and construe[] them in the light most favorable to the petitioner." *Andersen v. State*, 913 N.W.2d 417, 422-23 (Minn. 2018). Any doubts about whether an evidentiary hearing should be conducted is to be resolved in favor of the defendant seeking relief. *Opsahl v. State*, 677 N.W.2d 414, 423 (Minn. 2004). But

the allegations in a postconviction petition "must be more than bald assertions or conclusory allegations without factual support." *Berg v. State*, 403 N.W.2d 316, 318 (Minn. App. 1987), *rev. denied* (Minn. 1987).

Reid's postconviction petition was based on his claim that he received ineffective assistance of counsel. To obtain an evidentiary hearing on his claim, Reid was required to allege facts that, if proved by a preponderance of the evidence, would satisfy the two-prong *Strickland* test. *See Bobo v. State*, 820 N.W.2d 511, 516 (Minn. 2012) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). *Strickland* requires a defendant to show "that counsel's representation fell below an objective standard of reasonableness" and, if it did, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Davis*, 15 N.W.3d at 644.

In his postconviction petition, Reid alleged:

> Prior to trial, [Reid] provided his attorney with multiple pieces of evidence, including audio, video, emails, and text messages that supported his defense that A.O.'s testimony was not credible and that the sex was consensual. This evidence included, but was not limited to, recorded statements by A.O. where she admitted: (1) that she was not claiming that the sex was nonconsensual; (2) that she only told police that the sex was nonconsensual because that is the story that police wanted; and (3) that she did not want to pursue charges against [Reid]. [Reid's] attorney did not present any of this evidence at [Reid's] trial.

Reid also alleged that "his attorney did not review the evidence, investigate the evidence, or introduce the evidence at trial."

The district court denied Reid's petition without an evidentiary hearing because it determined that Reid's allegations were, quoting the supreme court's decision in *Fratzke*

11

*v. State*, "too generalized to warrant an evidentiary hearing." 450 N.W.2d 101, 102 (Minn. 1990). The district court took issue with the fact that Reid did not provide the dates associated with the alleged evidence, did not attach any of that evidence to the petition, and did not present "any specific allegations of showing that evidence to his attorney or how his attorney reacted to that evidence." The district court concluded that Reid's claims were bare allegations, stating "if they sufficed to entitle a petitioner to an evidentiary hearing, no evidence at all would be required to get a hearing."

Reid argues that the district court erred, and we agree. While the allegations in his petition were certainly minimal, they did allege that there are recorded statements in which A.O. denied that the sex was nonconsensual, that Reid shared the recordings with his lawyer before trial, and that his lawyer did not take action to review, investigate, or introduce the recordings. It is true that the petition did not include dates, but it did allege that the recordings were shared with counsel before trial. And, although the alleged recorded statements themselves were not produced, the petition did allege who made the statements and what the contents of the statements were. When the petition's allegations are taken as true and viewed in the light most favorable to Reid, the petition does not "conclusively show" that Reid is entitled to no relief under *Strickland*. Minn. Stat. § 590.04, subd. 1.

To convince us otherwise, the state points to *Fratzke* and *Berg*. In *Fratzke*, the supreme court affirmed the summary denial of a postconviction petition alleging ineffective assistance of counsel when "[t]he petition allege[ed] that trial counsel did not properly handle hearsay and inconsistent testimony and 'coached' the accomplice, who

12

testified for the state." 450 N.W.2d at 102. The supreme court concluded that these allegations—made without any further elaboration by the defendant or his postconviction counsel—were "too generalized" to require an evidentiary hearing. *Id.* Here, in contrast, Reid alleged that he provided his trial counsel recordings of statements by the complainant that undermine that the sex was nonconsensual and that his counsel did not act on them. This was a factual allegation that, taken as true, could satisfy the *Strickland* standard.

*Berg*, too, is different from this case. In *Berg*, we affirmed the district court's summary denial of a petition for postconviction relief because the petition relied on vague and conclusory allegations that the defendant's attorneys persuaded cellmates to steal his legal notes without identifying the cellmates, describing the notes taken, or explaining how the alleged misconduct affected his conviction. 403 N.W.2d at 318. Here, Reid's petition was more specific in detailing that the evidence was in the form of audio recordings and describing the contents.

In sum, we conclude that the district erred by summarily denying Reid's petition for postconviction relief. We therefore reverse that decision and remand for an evidentiary hearing.

**Affirmed in part, reversed in part, and remanded.**